UNITED STATES of America and Robert E. Grant, Special Agent, Internal Revenue Service, Plaintiffs-Appellees,

v.

A. Burton HANKINS, Individually and as Executor of the Estate of Bewel A. Hankins, et al., Defendants-Appellants,

Robert Lewis Smith,
Intervenor-Appellant.

UNITED STATES of America and Robert E. Grant, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

A. Burton HANKINS and Hugh C. Montgomery, Jr., Respondents-Appellants.

Nos. 76–3467 and 77–1967.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1978.

Paul P. Lipton, Milwaukee, Wis., James S. Nippes, Jackson, Miss., for A. Burton Hankins.

Charles L. Brocato, Jackson, Miss., for Hugh C. Montgomery, Jr.

J. N. Raines, Michael A. Robinson, Memphis, Tenn., for Robert L. Smith.

H. M. Ray. U. S. Atty., William M. Dye, Jr., Thomas W. Dawson, Asst. U. S. Attys., Alfred E. Moreton, III, Oxford, Miss., Gilbert E. Andrews, Chief, App. Section, Myron C. Baum, Acting Asst. Atty. Gen., Robert E. Lindsay, M. Carr Ferguson, Asst. Attys. Gen., Charles E. Brookhart, William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D. C., for United States.

Before COLEMAN, SIMPSON, and TJOFLAT, Circuit Judges.

COLEMAN, Circuit Judge.

This is a consolidated appeal. No. 76–3467 is taken from orders of the District Court for the Northern District of Mississippi enforcing several summonses directed by the Internal Revenue Service to A. Burton Hankins, Hugh Montgomery, and Robert Lewis Smith, 26 U.S.C., § 7602.

No. 77–1967 is from a subsequent order of the Court finding Hankins in contempt of its earlier enforcement order and Montgomery in contempt for refusing to answer questions in open court.

We affirm in part, reverse in part, and dismiss Montgomery's appeal in No. 77–1967 for lack of appellate jurisdiction.

In 1957, A. Burton Hankins and Bewel Hankins, *brothers*, formed a partnership for the operation of a planing mill and lumber business at Elliott, Grenada County, Mississippi.[1] The partnership continued until the death of Bewel on November 19, 1971.

Bewel was survived by the wife of his second marriage and by three sons of a former marriage, none of the three having attained the age of majority. The surviving widow, Mrs. Frances Hankins, initially contested Bewel's last will and testament. A certified public accountant, William Boswell, was retained to perform audits of the late husband's financial status, which included the Hankins Lumber Company. Thereafter, as authorized by state law, Mrs. Hankins renounced the will and elected to take as if by intestacy. Consequently, in January, 1972, Bewel Hankins' last will and testament was admitted to probate in solemn form by the Chancery Court of Grenada County. That Court, in compliance with state statutes, authorized Burton Hankins to continue the operations of the partnership.

In August, 1972, by appropriate instruments of conveyance, Mrs. Frances Hankins sold her interest in the lumber company to the surviving partner, Burton Hankins.

In October, 1972, the Chancery Court allowed Burton to purchase the interests of the sons, nevertheless requiring, as Bewel's will had requested, that upon the conversion of the partnership into a corporation, to be known as Hankins Lumber Company, Inc., the children would be sold stock equal to the value of their previously existing interest in the partnership. Burton thus became the majority stockholder in the new corporation, which was not activated until January 2, 1973. Having purchased from the widow and sons the entire interest of

---

1. The record does not reveal whether the partnership agreement was oral or written. It is undisputed that each brother owned a 50% interest in the partnership.

the deceased Bewel Hankins in 1972, with the corporation taking effect in 1973, Burton filed his 1972 income tax return as sole proprietor of the business for that year. In the hearings before the District Court the attorney for the Department of Justice and the Internal Revenue Agent referred to the 1972 operations as that of a sole proprietorship, but the Court made no findings as to whether the operations from November 19, 1971 to January 2, 1973, were that of a sole proprietorship or a partnership between Burton Hankins and the estate of his deceased brother.

On May 8, 1974, the Chancery administration of the Estate of Bewel Hankins was concluded and Burton, as Executor, was given his final discharge.

In January, 1973, an informant, Leonard E. Parnell, an employee of Hankins' certified public accountant, wrote the Internal Revenue Service, alleging that he had seen alterations to the 1971 Hankins records raising a potential for tax fraud. The matter was referred for investigation to the Audit Division. A revenue agent contacted Burton Hankins, who referred him to his accountant, Lewis Smith, for the audit of the 1971 books. During that examination the agent uncovered apparent discrepancies, so he then requested the records for 1972. Smith informed the agent that the 1972 records were held by Mr. Hankins' attorney, Hugh Montgomery. In June, 1974, the revenue agent met with Attorney Montgomery and discussed the 1971 adjustments. Mr. Montgomery, on behalf of Hankins, offered to make good the 1971 discrepancies but the agent refused to close out 1971 before seeing the 1972 books. This brought on an impasse and the interview was terminated. The case was then turned over to the Intelligence Division and assigned to a special agent, with Montgomery informing the Internal Revenue Service that Burton Hankins, relying on his Fifth Amendment rights, declined to produce the 1972 records.

A heavy downpour of Internal Revenue summonses soon ensued.

One summons, dated March 10, 1975, to A. Burton Hankins, Hankins Lumber Company, Grenada, Mississippi 38926, required him to appear and produce the following:

"All records in your possession pertaining to the Hankins Lumber Company partnership for the years 1968, 1969, 1970, 1971, and 1972, and other records including, but not limited to the following:

"1. General Journal and General Ledger.

"2. Accounts Receivable Subsidiary Ledger.

"3. Accounts Payable and Accounts Receivable Ledger Sheets.

"4. Bank statements, canceled checks, check stubs, and original deposit tickets, if available, or duplicate deposit tickets for all bank accounts open during 1968 through 1972.

"5. All accountant's work papers pertaining to the preparation of the U. S. Partnership Return of Income (Form 1065) for the Hankins Lumber Company for the period beginning January 1, 1968, and ending November 20, 1971.

"6. Copy of formal partnership agreement."

Another summons of the same date required Hankins to appear and produce

"All records pertaining to the preparation of the estate tax return and the settlement of the estate of Bewel A. Hankins, a former partner in the Hankins Lumber Company, including, but not limited to, a list of the partnership trade accounts receivable and accounts payable, as well as inter-company accounts receivable and payable."

Additionally, a summons directed Hankins to produce the books, records, and working papers of the corporation for 1973 and to testify thereasto. The *duces tecum* portion of this summons has been satisfied and is no longer an issue. The testimonial aspect of the summons will be treated *infra*.

In response to the summonses, Hankins appeared, with counsel, and would state

only that he had not produced and would not produce the records.

As no doubt expected, petitions were filed to enforce the summonses. At the hearing, the trial judge found that the government had made the requisite showings of relevancy, materiality and proper purpose. The record supports these findings. The Court ordered Mr. Hankins to produce the desired documents and to testify after the government had an opportunity to examine them. Hankins Lumber Company, Inc., was directed to appoint an individual who was conversant with the books and records, who would not claim the Fifth Amendment privilege, to appear and testify as to those books and records.

Hankins claims on appeal that by virtue of his status as a partner and later purchaser of the entire interest of the deceased partner he owns all the partnership papers in his personal capacity and not in a representative capacity, that because the Bewel Hankins estate is closed he likewise owns such of those papers as are now in his possession, and that by transfers appearing of record he also owns the papers produced by the Boswell audit; therefore, the Fifth Amendment privilege protects the papers from involuntary disclosure:

> "[No person] shall be compelled in any criminal case to be a witness against himself", Amendment V.[2]

We address ourselves first to the matter of the partnership papers.

In *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Supreme Court held that any forcible and compulsory extortion of a man's private papers to be used as evidence to convict him of crime violates the Fifth Amendment privilege.

More recently, however, the Supreme Court has adopted the view that the compulsion must be exerted upon the person claiming the privilege, not someone else, and that the compulsion must result in that person being made a *witness* against himself, *Fisher v. United States,* 425 U.S. 391, 397, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and cases cited. Compulsion for production against the individual's accountant or his attorney in the absence of the attorney-client relationship falls without the protection, *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Fisher v. United States, supra.*

Even more specifically, the Court held that "the Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of] private information'" (citations omitted). *Id.,* 425 U.S. at 401, 96 S.Ct. at 1576.

The Court went on to hold, 425 U.S. at 409, 96 S.Ct. at 1580:

> "A subpoena served on a taxpayer requiring him to produce an accountant's work papers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own testimonial communications (citations omitted). The accountant's work papers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him."

The Court concluded that "however incriminating the contents of the accountant's workpapers might be, the act of producing them . . . would not itself involve testimonial self-incrimination". *Id.,* at 411, 96 S.Ct. at 1580.

At the end of all this, however, the Court said, 425 U.S. at 414, 96 S.Ct. at 1582:

> "Whether the Fifth Amendment would shield the taxpayer from producing his

---

2. The right of people to be secure in their papers and effects against unreasonable searches and seizures is a guarantee of the Fourth Amendment.

own tax records in his possession is a question not involved here; for the papers demanded here are not his 'private papers', see *Boyd v. United States,* 116 U.S., at 634–635, 6 S.Ct. 524."

During the course of the *Fisher* opinion, 425 U.S. at 408, 96 S.Ct. at 1579, the Court took occasion to say:

"Furthermore, despite *Boyd,* neither a partnership nor the individual partners are shielded from compelled production of partnership records on self-incrimination grounds, *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974)."

■ From this most recent decision of the Supreme Court we are convinced that subpoenas for the Hankins Lumber Company partnership records from January 1, 1968 to November 19, 1971, the date of Bewel Hankins' death, would not have infringed any Fifth Amendment privileges of either partner had the subpoenas been served during the lifetime of the partners. Neither do we believe that the subsequent acquisition of those papers by Burton Hankins, as his own, changes either the identity or character of the books, papers, and records from what they undoubtedly were at the time they were made, *United States v. Bellis, supra,* 417 U.S. at 96, 94 S.Ct. 2179, Footnote 3.

■ Some doubt is cast upon the status of the 1972 papers because the Revenue Agent and the Attorney for the Department of Justice uniformly referred to the 1972 operations as a sole proprietorship. The District Court made no specific finding on this point, but the trial record shows that in 1972 Burton Hankins continued to operate the business by virtue of a court order, which necessarily included the interests of the heirs, devisees, and legatees of the deceased partner. Moreover, when Burton Hankins bought the interests of the three sons, with court approval, in October, 1972, the purchase was allowed *in trust* for the delivery of the prescribed amount of stock in the successor corporation. We must accordingly hold that the 1972 books, records, and papers for the operation were not the private personal papers of Burton Hankins, *Fisher v. United States, supra,* nor were they the property of a sole practitioner or sole proprietor, *Bellis v. United States, supra,* 417 U.S. at 87, 88, 94 S.Ct. 2179.

■ Certainly there can be no doubt that Mr. Hankins may be required to produce the papers connected with the Boswell audit. The audit was not made at his behest; indeed it was made in opposition to his interests. While Hankins may be the "owner" and now in possession it contains nothing that could be charged to him as his own testimony.

■ We are equally unable to see how any of the papers incident to the estate of Bewel Hankins may be denominated as "personal and private". Even though the estate is now closed, the Executor was never acting in either a personal or a private capacity. He was an officer of the Court which appointed him, under whose direction and control he served. He was answerable as a fiduciary, charged with duties which transcended his personal wishes or personal views. Again, the books, papers, and records did not lose either their nature or their identity when the estate was closed. Additionally, as to the estate, Hankins was acting in a representative capacity, *Bellis, supra.*

The judgment of the District Court enforcing the summonses directed to Burton Hankins for the production of books, papers, and records must, in all respects, be affirmed.

■ The requirement that Mr. Hankins testify before the Internal Revenue Agent is, of course, subject to the rule prevailing in this Circuit that he must appear in re-

sponse to the summons, thereafter the Internal Revenue Service must propound specific questions, and the witness may then claim the privilege as to each question, *United States v. Malnik,* 5 Cir., 1974, 489 F.2d 682; *United States v. Roundtree,* 5 Cir., 1970, 420 F.2d 845.

■ This brings us to the final issue, involving the order of the trial court that Mr. Hankins, as President of the corporation, produce as a witness before the special agent some employee of the firm who is familiar with the books, records, and papers of the corporation for 1973, and who will not claim the Fifth Amendment privilege against self-incrimination. At first blush this struck us as a most unusual order. The government in its brief cites no tax case in which such an order has been entered. It relies on *United States v. Kordel,* 397 U.S. 1, 7, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), a Food and Drug case in which no officer of the corporation claimed the privilege, no showing was made that no officer of the corporation could have answered the questions without incriminating himself personally, and, more to the point, no court had entered such an order as we have here. The government has made no showing of its inability to ascertain who kept the books, records, and papers for the corporation in this comparatively small operation in a small city in the year 1973. If the Internal Revenue Service wishes such testimony it should use its own resources to subpoena any person likely to have the requisite information and let them claim the privilege if they so desire. Moreover, we do not know how Hankins could compel the attendance of a witness, nor do we see how the Constitution would allow him to speak for the strictly personal right of any individual to claim the privileges of the Fifth Amendment. We accordingly reverse this portion of the District Court order, especially since the record shows that Accountant Smith was employed by Hankins in 1973, apparently was in charge of its accounting facilities for that year, and the government

frankly conceded on oral argument that Mr. Smith is a prime target for criminal prosecution in connection with this very case.

*The Summons for Robert Smith, C.P.A.*

The summons issued to Robert Smith called for testimony and all records and workpapers relative to the estate tax return and 1973 corporate tax return. Smith contends that the tax investigation assumed a predominantly criminal aspect, and that enforcement of the summons was therefore an abuse of the Court's process.

Smith nas complied with the Court's order to produce the 1973 corporate records. That portion of the case is therefore moot, *United States v. Carpenter,* 5 Cir., 1970, 425 F.2d 264; *Baldridge v. United States,* 5 Cir., 1969, 406 F.2d 526.

The government did not pursue the estate papers at the enforcement hearing, and the District Court's order made no mention of the estate papers. That omission was not cross appealed by the government. Consequently, the only issue remaining for our consideration is the claim that the investigation, as to Robert Smith, acquired such a dominant criminal aura as to preclude the use of an administrative summons.

The Internal Revenue Service has made no recommendation for criminal prosecution of appellant Smith. However, the government counsel unequivocally informed the Court during oral argument that Smith probably would be prosecuted should evidence of criminal conduct on his part be uncovered.

■ Since no recommendation for prosecution had been made, and there is in the record no evidence of bad faith on the part of the Internal Revenue Service in the issuance of the summons, we hold that the use of the summons was proper and enforceable as to the records, *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

■ Our inquiry does not end here, however, for we must still consider the *ad testi-ficundum* portion of the summons.

Of key significance to this issue is the fact that Smith could have no civil liability as a consequence of this investigation, only criminal liability. The *Miranda* warnings given to Smith by the agent prior to any questioning was a clear signal of his potential criminal liability.

Nevertheless, the government argues that Smith can be compelled to appear, take the witness stand, and either answer the questions the government asks, or plead his Fifth Amendment protection on a question-by-question basis. In the particular circumstances of Smith's situation, we disagree. Were Smith the target of an investigation for robbing a bank, he would unquestionably have the right to stand on his silence. There is no significant difference between Smith as a suspected participant in a tax fraud and Smith as a suspected bank robber.

We hold that Smith cannot be compelled to take the stand by a § 7602 Internal Revenue Service summons. The order that he must do so is reversed.

### No. 77–1967

### Hankins' Appeal from Contempt

On the date ordered by the Court after the enforcement hearing, Hankins produced various books and records. The government discovered that the Boswell audit report itself was not produced and that numerous pages were missing from the company books. Upon petition by the government, the Court issued an order to show cause why Hankins should not be held in contempt of the Court's enforcement order. The ensuing hearing resulted in a conviction for contempt. Hankins was ordered into the custody of the Attorney General until such time as he produced the missing papers. Confinement has been stayed pending our determination of this appeal.

■ Hankins' argues that the District Court erred in holding him in contempt because he had informed the Court at the enforcement hearing, through his attorney, that he did not have all the records summoned by the government. Our inspection of the record reveals this contention to be totally devoid of merit.[3] No evidence on inability to produce was presented by Hankins during the enforcement hearing in response to the government's evidence that the books and records were in his hands. At the contempt hearing the government relied on the finding of fact, of which the Court took judicial notice, and the testimony of Special Agent Grant that apparently various pages of the produced records had been systematically removed. In an effort to rebut this evidence, Hankins attempted to testify under the condition that he not be exposed to cross-examination. When the Court properly refused to agree to this condition, Hankins rested without offering evidence.

The government has carried its burden to obtain enforcement of its summonses by showing that they were administratively regular and that the information sought was relevant, material, and not in the hands of the Commissioner, *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). No evidence has been presented by Hankins, at either the enforcement hearing

---

3. Finding of Fact by the District Court:

  Each of the respondents in these four cases, with the exceptions of Attorneys Hugh C. Montgomery and Tommy M. McWilliams, acknowledged to the Court that he had in his possession, in whatever capacity, the summoned records. Respondent Montgomery de-nied that he had in his possession at the time of the issuance of the summons to him the records demanded by that summons (the Boswell audit papers). The government accepted that representation and deemed the *duces tecum* provision of the summons to Montgomery complied with.

or the contempt hearing that he was unable to produce the records. He relies on *United States v. Silvio*, 333 F.Supp. 264 (W.D.Mo., 1971) for the proposition that the government must prove that the records are in existence and in the possession of the respondent before any defense of non-possession need be raised. What appellant overlooks is that the respondents in *Silvio* appeared before the Internal Revenue Agent as ordered by the District Court and testified under oath that they had no further documents. In response to a subsequent show cause order respondents submitted an affidavit stating again that all the records in their possession had been produced. In the face of these representations, the Court required the government to show existence and possession of the papers sought. Here, however, Hankins has made no showing whatsoever that he does not possess the records named in the summonses.

We have no alternative but to affirm the order of contempt as to Hankins.

### No. 77–1967

### The Summons to Attorney Montgomery and His Subsequent Conviction of Contempt

On March 14, 1975, Hugh C. Montgomery, Jr., a tax attorney, formerly for seventeen years an employee of the Internal Revenue Service, was served with a subpoena to appear and produce the Boswell audit papers. Montgomery appeared and stated that he did not have them. The government accepts this response. He declined to answer as to whether he had ever had the papers, claiming both the attorney-client privilege and Hankins' Fifth Amendment privilege.

At the enforcement hearing, the District Court, in part, ordered as follows:

"ORDERED, ADJUDGED and DECREED that Hugh C. Montgomery, Jr. comply with the summons issued to him on March 14, 1975, by appearing before Special Agent Robert E. Grant, or any other proper officer of the Internal Revenue Service, at a time and place to be agreed upon mutually by Hugh C. Montgomery, Jr., and Special Agent Grant, for the purpose of giving testimony relating to the federal tax liabilities of A. Burton Hankins for the years 1969 through and including 1973 . . . ."

On December 9, 1976, Montgomery appeared and declined to answer questions, again claiming the attorney-client relationship and other grounds. He was cited for contempt of the enforcement order. At the hearing he testified that Mr. Hankins had employed him "to advise and consult with him about an examination of certain income tax returns of his that were under examination at the time". Upon advice of counsel, he refused to answer as to what books and records he had examined. For failure to answer after being directed to do so by the Court he was held in contempt but sentence was deferred pending the outcome of the appeal in No. 76–3467.

Mr. Montgomery's appeal from the contempt finding must be dismissed for lack of a final decision of the District Court, 28 U.S.C., § 1291; *S. E. C. v. Naftalin*, 8 Cir., 1972, 460 F.2d 471, 475.

The other errors assigned by the respective appellants have been duly considered and found to be without merit.

The results in both appeals are:

The enforcement of the summonses directed to Burton Hankins and his subsequent conviction of contempt for failure to obey the enforcement order are affirmed.

The direction that Smith shall give testimony before the Internal Revenue Service is reversed.

Montgomery's appeal from the finding of contempt in the presence of the Court is dismissed.