**CROCKER UNITED FACTORS, INC. and Springs Mills, Inc., Plaintiffs,**

v.

**Joseph SCHULTZ, Harold Hiltzik, Solomon Sperling and Jerry Schneider, Individually and d/b/a Schultz, Hiltzik, Sperling & Schneider, a Partnership, Defendants.**

No. 79 Civ. 6039.

United States District Court, S. D. New York.

Aug. 8, 1980.

Hahn, Hessen, Margolis & Ryan, New York City, for plaintiffs; David I. Blejwas, New York City, of counsel.

Kantor, Davidoff, Winston & Ferber, P. C., New York City, for defendants Solomon, Sperling and Schultz, Hiltzik, Sperling & Schneider; Robin N. Wolfe, New York City, of counsel.

Hall, Dickler, Lawler, Kent & Howley, New York City, for defendants Jerry Schneider and Harold Hiltzik; Norman L. Faber, New York City, of counsel.

Arnold Davis, New York City, for defendant Joseph Schultz.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs seek reconsideration pursuant to 28 U.S.C., section 636(b)(1)(A),[1] of an order of Magistrate Kent Sinclair dated

---

**1.** 28 U.S.C. § 636(b)(1)(A) provides in pertinent part:

A judge of the court may reconsider any pretrial matter [referred to a magistrate for pretrial determination] where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

May 22, 1980 denying their motion to compel the production by the defendant Solomon Sperling of certain accountants' work papers. For the reasons stated hereafter, the motion is granted and the matter is remanded to the magistrate for further proceedings not inconsistent with this opinion.

This action is one for malpractice in the field of public accounting. The defendants are the former partners of Schultz, Hiltzik, Sperling & Schneider ("SHS&S"), a dissolved partnership that had engaged in the practice of certified public accounting. The plaintiffs are two creditors of The Eastern Isles, Inc. ("Eastern Isles"), a now-insolvent corporation that had been a client of SHS&S. The complaint alleges that Eastern Isles' consolidated financial statement for 1978 was prepared and certified by SHS&S; that the statement was materially misleading in that Eastern Isles' net worth was grossly inflated; that the misstatements were due to the willful and reckless disregard of generally accepted accounting principles and auditing standards in the preparation of the financials by SHS&S; and that the plaintiffs relied on the certified statement to their detriment in dealing with Eastern Isles.

In the course of discovery, the plaintiffs sought from each defendant, by notice to produce, *inter alia*, "[a]ll work papers prepared by any of the defendants relating to accounting services performed for the Eastern Isles, Inc. [from January 1, 1977 through February 13, 1980]." The defendant Sperling refused to produce any of the work papers called for, asserting his constitutional privilege under the Fifth Amendment against self-incrimination.[2] The plaintiffs moved before the magistrate to compel Sperling to produce the documents, on the ground that he had no personal

privilege against self-incrimination with respect thereto since they were prepared while he was a member of a partnership and in furtherance of its business. The magistrate, however, upheld Sperling's position finding that his claim of personal privilege against self-incrimination was applicable since he prepared the work papers for the 1978 statements on his own and since they were retained by him after the dissolution of SHS&S and were "in his possession, custody and control."[3]

The factual background relevant to the determination of this matter is not significantly disputed. Prior to the end of 1975 there had existed two separate entities, two-member partnerships engaged in the practice of public accounting—Hiltzik & Schneider and Schultz & Sperling. In late 1975 these two firms merged to form SHS&S, a partnership consisting of the four members of the predecessor firms, the defendants herein. In February 1976 they filed a Business Certificate for Partners under that name with the New York County Clerk. The new firm remained in existence for about two years. On February 21, 1978 they agreed to dissolve the partnership as of January 31st of that year. It was agreed that the partners would reactivate the former two-man partnerships; Sperling and Schultz signed a separate agreement forming anew the partnership, Schultz & Sperling and Hiltzik and Schneider likewise continued to function as a separate partnership under the name of Hiltzik & Schneider. The dissolution agreement further provided that the two reconstituted firms would, for a limited time, each have the right to use the name SHS&S in their now separate practices. The use of that name extended to their operations, financial reports, client relationships, billing procedures and main-

---

**2.** The other defendants responded that they had none of the aforedescribed documents.

**3.** While the magistrate ruled that Sperling properly involved his personal privilege against

self-incrimination, the scope of that privilege was reserved for further consideration to be determined with respect to specific questions yet to be put to him.

tenance of bank accounts. Such use was to terminate at the request of any one of the four ex-partners.

Eastern Isles had originally been a client of Schultz & Sperling from the 1930s or 1940s under a different name and as Eastern Isles since the 1960s. At least since 1960 all of the work done by Schultz & Sperling for Eastern Isles was performed by Sperling. Eastern Isles became a client of SHS&S when that firm came into existence and Sperling continued to handle the account exclusively. After the dissolution of SHS&S in January 1978, Eastern Isles again became a client of Schultz & Sperling and, as always, Sperling handled that account and prepared the material which is the core of this litigation and the work papers in connection therewith that are sought to be produced.

In July 1979, a year after the preparation and issuance of the 1978 financial statement upon which plaintiffs' claims are based, an action was commenced against the four defendants.[4] Sperling's three co-defendants say that this was the first knowledge they had with respect to the charges made by Eastern Isles' creditors based upon the financial statement. Upon confronting Sperling, he allegedly acknowledged to them that he had grossly falsified the statement.[5] When they attempted to locate the Eastern Isles records in the partnership files, they discovered that Sperling had removed them and refused to produce them. The lawsuit triggered the dissolution of the partnership of Schultz & Sperling on September 25, 1979. It also led to the filing in the same month of a Certificate of Discontinuance of Business of SHS&S in the office of the New York County Clerk.

In determining that Sperling was free to assert his Fifth Amendment privilege vis-a-vis the requested Eastern Isles work papers, the magistrate approached the issue on the basis that Sperling was asserting a privilege in personal papers; he apparently overlooked or disregarded the significant fact that Sperling prepared the work papers sought while a partner in either SHS&S or in Schultz & Sperling,[6] in the course of those partnerships' businesses; and the impact, given this factor, of the Supreme Court's decision in *Bellis v. United States.*[7] It is not disputed that had Sperling prepared the work papers while practicing as a sole proprietor,[8] the magistrate's determination would have been proper, but a fact that cannot be downed is that Eastern Isles was a client of the reactivated partnership of Schultz & Sperling and that the 1978 financial statement and all work papers here at issue were prepared by Sperling as

---

**4.** This was an action by Meinhard Commercial Corporation, another creditor of Eastern Isles. The instant suit, based on the same financial statement, was commenced in November 1979.

**5.** Schultz, Hiltzik and Schneider in addition to a denial of the material allegations of plaintiffs' complaint have each set forth cross-claims against Sperling based upon his alleged fraud.

**6.** The precise dates the papers were prepared does not appear from the existing record but since the certified financial statement for the period ended April 30, 1978 allegedly was issued in July 1978, it is apparent that Sperling worked on the requested documents at issue either during the period he was a member of SHS&S which was dissolved as of January 31, 1978 or thereafter while he was a member of the reactivated partnership of Schultz & Sperling. One affidavit states that the 1978 statement was prepared by Sperling between April and July 1978. In addition to the documents relating to the 1978 financial statement, plaintiffs sought to obtain papers relating to a 1977 financial statement. It is clear that those documents were prepared while Sperling was a partner of SHS&S.

In the light of the fact that Sperling was at all relevant times a partner of one or the other partnerships, we do not consider the significance of the continued public use, with the consent of all four defendants, of the name of SHS&S, after the dissolution of that partnership.

**7.** 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

**8.** *See* footnote 10, *infra.*

a partner of either that firm or SHS&S and those records are held in that representative capacity. This fact, in light of *Bellis*, requires a different result.

Prior to the *Bellis* decision, the Supreme Court had held that neither corporations nor unincorporated associations possessed a constitutional privilege against self-incrimination and that individuals in possession of the records of such entities could not assert their personal privilege with respect to such records, even though the documents may incriminate them personally.[9] In *Bellis* this rule was expanded to preclude the assertion of the privilege by a partner with respect to the records of a partnership in his possession. The facts of *Bellis* are strikingly similar to those presented here. Bellis had been a partner in a small (three partner) law firm. During his tenure with the firm, the partnership's financial records were maintained by his secretary in his office. Bellis left the partnership and it was dissolved. Thereafter he took possession of the defunct firm's records, and when these were sought by a federal grand jury, refused to produce them on Fifth Amendment grounds. Finding that the records sought were not personal records but the records of an entity with an established institutional identity, and that Bellis possessed these records not in a personal but in a representative capacity, the Supreme Court held that his personal privilege against compulsory self-incrimination was inapplicable.[10]

Unless *Bellis* is inapposite to this case, its rule that a partner possesses no Fifth Amendment privilege in partnership records must control the outcome of plaintiffs' motion. The magistrate distinguished and dismissed *Bellis* in a footnote,[11] noting only that in *Bellis* the records were held in a representative capacity on behalf of the firm of which Bellis had been a member and "related to the finances of the law partnership, not to a client matter handled by any member thereof," whereas Sperling "retained both permission to use the name of the partnership while working alone and custody of the papers—of his own authorship—relating to [Eastern Isles] as the sole accountant for that client after dissolution of SHS&S." This statement disregards the fact that the reactivated partnership of Schultz & Sperling, not Sperling alone, was the accountant for Eastern Isles.[12] In any event, neither of these distinctions compels a different result from that reached by the Supreme Court in *Bellis*.

There is no basis to conclude that the capacity in which Sperling possesses the Eastern Isles work papers is any different,

---

9. *See, e. g., United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (collective entities); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (corporations).

10. The *Bellis* rule has frequently been restated and applied. *See, e. g., Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976); *In re Grand Jury Proceedings*, 601 F.2d 162, 167 (5th Cir. 1979); *United States v. Greenleaf*, 546 F.2d 123, 126–28 (5th Cir. 1977); *United States v. Hankins*, 565 F.2d 1344 (5th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); *United States v. Kuta*, 518 F.2d 947, 952–54 (7th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975); *United States v. Mahady & Mahady*, 512 F.2d 521 (3d Cir. 1975); *United States v. Mandel*, 437 F.Supp. 258 (D.Md.1977); *United States v. Wood*, 435 F.Supp. 870 (W.D. Ky.1977); *Matter of September, 1975 Special Grand Jury*, 435 F.Supp. 538 (N.D.Ind.1977); *United States v. B & E Paving Co.*, 77–1 U.S. T.C. ¶ 9183 (2d Cir. 1976). *Cf. In re Grand Jury Proceedings*, 576 F.2d 703 (6th Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978) (*Bellis* extended to cover documents of non-partnership, co-tenancy). Sole proprietorships are, of course, still entitled to the Fifth Amendment privilege with respect to their records. *See, e. g., I.C.C. v. Gould*, 629 F.2d 847, (3d Cir. 1980); *In re Oswalt*, 607 F.2d 645 (5th Cir. 1979).

11. *See* Magistrate's Order, footnote 2.

12. It is not without interest that Sperling, in an affidavit submitted in opposition to this motion, states that upon the dissolution of SHS&S " . . . Joseph Schultz and I former [sic] the partnership of Schultz & Sperling. At the time that SHS&S dissolved, it was understood among its partners that any work papers prepared by me in connection with the previous rendering of services to former clients of SHS&S would be retained by me *as the property of Schultz & Sperling*." (emphasis supplied)

or more personal, than that in which Bellis held the records of his firm. In both cases the partnership for which the documents were created was dissolved at the time the records were sought and one partner retained physical custody of the records.[13]

The magistrate also considered the fact that Sperling was the author of the work papers. While this was not the case in *Bellis*, it is well-established that authorship by the person asserting the privilege is not sufficient to trigger its application.[14] Sperling appears to have had exclusive control over the work papers even while he was a member of the two partnerships. Even if Sperling had by arrangement with his partners maintained exclusive access to the work papers, his position would be no better. In *Matter of Grand Jury Impaneled Jan. 21, 1975*,[15] a lawyer who had just such an arrangement claimed that this took him out of the *Bellis* holding. The Third Circuit found that such an argument distorted the holding of the Supreme Court's opinion and rejected it. Its reasoning applies equally well to this case.

> [T]he fact that Freedman preserves exclusive access to certain records is inconsequential for fifth amendment purposes. To hold that the members of an institution could resurrect the fifth amendment privilege with respect to records, that they individually forfeited by identifying themselves with that institution, would seriously erode the established principle that the privilege against self-incrimination is purely personal.[16]

Sperling has asserted, however, that the documents sought have become his "property"; that when SHS&S dissolved, the partners "understood" that the work papers would be retained as the property of Schultz & Sperling; and that when that firm dissolved, its two partners "understood" that the papers would become Sperling's property. Schultz disputes the existence of any such understanding and it is also belied by Sperling's ex-partners' attempts to find the records when he admitted his fraud. Even if there had been such an understanding, however, it could not enhance Sperling's privilege in the documents. A contrary rule, permitting this kind of "understanding" to resurrect a personal interest in a document, ignores the rationale of *Bellis* that the organizational character of the records contradicts the claim that they are personal papers within the "private inner sanctum of individual feeling and thought"[17] meant to be protected by the privilege. The essential character of the documents, established at the time and by the circumstances of their creation, does not change merely because one partner asserts exclusive ownership rights to them. Indeed, to hold to the contrary would allow partners to evade *Bellis* and create an otherwise non-existent privilege simply be agreeing that their records would be "owned" by only one partner either before or after dissolution.

This same conclusion has been reached by other courts considering the question. In *United States v. Hankins*,[18] for example, a lumber business partnership had been dissolved by the death of one of the two partners. Records of the partnership were sought from the surviving partner who had continued to run the business as a sole

---

**13.** The *Bellis* opinion explicitly states that the dissolution of a partnership does not give the possessor of its records any greater privilege than he would have had during the partnership's existence. 417 U.S. at 96 n.3, 94 S.Ct. at 2187.

**14.** *See, e. g., Fisher v. United States*, 425 U.S. 391, 410 n.11, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976); *Matter of Grand Jury Empanelled*, 597 F.2d 851, 861 n.24 (3d Cir. 1979); *United States v. Beattie*, 522 F.2d 267, 271 (2d Cir. 1975), *vacated on other grounds*, 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1976).

**15.** 529 F.2d 543 (3d Cir.), *cert. denied*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976).

**16.** *Id.* at 547. Indeed, in *Bellis* itself, the claimant of the privilege also appears to have had more or less exclusive access to the records of his partnership.

**17.** 417 U.S. at 91, 94 S.Ct. at 2184.

**18.** 565 F.2d 1344 (5th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979).

proprietor. He claimed a Fifth Amendment privilege on the ground that, by virtue of his interest as a partner and later as purchaser of the entire interest of the deceased partner, he owned the partnership records in a personal and not a representative capacity. The Fifth Circuit, noting under *Bellis*, that no privilege could have been asserted during the existence of the partnership, concluded:

> Neither do we believe that the subsequent acquisition of those papers by [the surviving partner], as his own, changes either the identity or character of the books, papers, and records from what they undoubtedly were at the time they were made.[19]

Hankins' assertion of the privilege was held improper. A similar conclusion was reached by the Second Circuit in *United States v. Beattie*,[20] where the court held that a taxpayer could not assert the privilege with respect to his accountant's work papers in his possession. Judge Friendly concluded that "[such papers] do not come within the privilege simply because the taxpayer possesses them *or even has acquired title to them.* . . . 'The right not to be compelled to be a witness against oneself is not a right to appropriate property that may tell one's story.' "[21]

In short, the Court finds that Sperling's position vis-a-vis the work papers prepared by him while a partner of SHS&S or Schultz & Sperling is, for Fifth Amendment purposes, indistinguishable from that of the petitioner in *Bellis* and that he does not possess those papers in a personal capacity.

The second factor relied on by the magistrate to distinguish this case from *Bellis* is that the papers sought here are not the financial records of the partnerships of

which Sperling was a member but "records related . . . to a client matter handled by [a partner]." The magistrate offered no explanation why this distinction should make for a different result. It may, however, be a reference to a footnote in the *Bellis* opinion itself wherein the court stated:

> Significantly, the District Court here excluded any client files from the scope of its order. A different case might be presented if petitioner had been ordered to produce files containing work which he had personally performed on behalf of his clients, even if these files might for some purposes be viewed as those of the partnership.[22]

This statement is not even dictum, let alone a holding to the effect that *Bellis* would not apply to records of a "client matter." It purports to do no more than to accentuate the precise bounds of the court's holding. Further, no case has been cited to this Court nor has exhaustive research discovered any case in which the distinction drawn by the magistrate has been relied upon. To the contrary, *Bellis* has been held to apply where the documents in question were not financial records. In *United States v. Mahady & Mahady*,[23] for example, *Bellis* was held to be "dispositive" where a subpoena sought from a law partnership the records pertaining to the relationship between the partnership and a corporate client including documents giving "details of work performed" and correspondence with the client. Similarly in *United States v. Mandel*,[24] the "day-timer" records of an attorney which contained a record of work performed for clients and which were prepared in the ordinary course of the partner-

19. *Id.* at 1349.

20. 522 F.2d 267 (2d Cir. 1975), *vacated on other grounds*, 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1976), *on remand*, 541 F.2d 329 (2d Cir. 1976).

21. *Id.* at 278 (emphasis added) (*quoting Matter of Harris*, 221 U.S. 274, 279–80, 31 S.Ct. 557, 558, 55 L.Ed. 732 (1911)). *Cf. Matter of Grand Jury Impanelled Jan. 21, 1975*, 529 F.2d 543, 547 (3d Cir.), *cert. denied*, 425 U.S. 992, 96

S.Ct. 2203, 48 L.Ed.2d 816 (1976) (partnership records are not protected by privilege merely because partners agree that access to records will not be shared).

22. 417 U.S. at 98 n.9, 94 S.Ct. at 2188.

23. 512 F.2d 521, 522 (3d Cir. 1975).

24. 437 F.Supp. 258 (D.Md.1977).

ship's business were held to be partnership property and not protected by the Fifth Amendment under *Bellis*.

Most directly on point, however, is a recent opinion *In re Grand Jury Proceedings Witness-Bardier*.[25] Bardier, an accountant, refused to comply with a subpoena seeking "work papers" he had prepared in connection with a client's tax return, asserting his own Fifth Amendment privilege. The district court held that inasmuch as Bardier was a member of a partnership, the work papers were prepared within the course and scope of the partnership's business, and were drawn up for the benefit of the partnership's client as well as for the benefit of the accountant; the work papers could not be considered Bardier's private papers and, under *Bellis*, he could assert no privilege in them.[26]

The Court is in accord with the conclusions reached in these cases. The records sought here are without doubt documents of a purely business nature. Moreover, they are not documents pertaining to Sperling's personal business, rather they were prepared by him solely in the course of pursuing the profit-making activities of the two partnerships, more particularly, in the instance of the 1978 financial statement, on behalf of the partnership of Schultz & Sperling. No reasoned basis has been proffered and there is none apparent to the Court to differentiate these "work papers" from the records at issue in *Bellis*.

Accordingly, there are no grounds in this case to warrant reaching a result different from that otherwise mandated by *Bellis v. United States*, and the Court concludes that the determination of the magistrate is clearly erroneous and contrary to law and must be reversed. The matter is remanded to him for further proceedings.

So ordered.

**25.** 486 F.Supp. 1203, 1213 (D.Nev.1980).

**26.** Similar results have been reached in two other cases as well: In *United States v. Radetsky*, 535 F.2d 556, 568–69 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976), *Bellis* was held to bar the assertion of the privilege with respect to a physician's records of patient treatment; and in *United States*

*v. Conroy*, 77 Cr. 670 (CHT), slip opinion (S.D. N.Y. August 9, 1978), the court rejected the contention that only "classically corporate" documents are amenable to compelled production and held that papers relating to corporate matters and written in fulfillment of the possessors' roles as executives were not protected personal papers.