United States Court of Appeals,

Eleventh Circuit.

No. 96-4676

Non-Argument Calendar.

In re GRAND JURY SUBPOENA DATED APRIL 9, 1996, (FGJ 96-02),

v.

Joan SMITH, Appellant.

June 21, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. FGJ-96-02), Federico A. Moreno, Judge.

Before KRAVITCH, EDMONDSON and BARKETT, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant has been held in civil contempt for refusing to testify before a grand jury on the ground that her testimony would incriminate her in violation of her rights under the Fifth Amendment. We reverse.

I.

Appellant was served with two grand jury subpoenas. One was directed to her in her personal capacity, and the other was directed to the custodian of records for a corporation of which she is the sole officer and director. Appellant filed a motion to quash the latter subpoena. In that motion, she stated that she did not have the specified records in her possession and that if she were questioned before the grand jury as to their location, she would invoke her Fifth Amendment right not to incriminate herself. When appellant was called before the grand jury, she testified that she did not have the records, and then, when asked where the records sought in the subpoena were located, she refused to answer.

After a hearing, the district court denied appellant's motion to quash the subpoena and ordered her to testify. When appellant refused to comply, the court held her in civil contempt and ordered her detention until she complied with the court's order or until the expiration of the grand jury's term. The order of contempt was entered on May 10, 1996. The district court stayed its contempt order until July 1, 1996, in order to allow this court to hear an appeal.[1]

## II.

The issue before us is whether a custodian of corporate records who is not in possession of the records may be compelled to testify regarding their location. We conclude that she may not.

The Fifth Amendment protects an individual from being compelled to provide testimony that might be self-incriminating. U.S. Const. amend. V. Testimony is not limited to oral declarations, but may include, *inter alia,* the production of documents. *E.g., United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In *Fisher,* the Court recognized that "[t]he act of producing evidence in response to a subpoena ... has communicative aspects of its own...." 425 U.S. at 410, 96 S.Ct. at 1581. The production of documents conveys the

---

[1]Section U.S.C. § 1826(b) provides that "[a]ny appeal from an order of confinement under this section shall be disposed of ... not later than 30 days from the filing of such an appeal." June 10, 1996 was the thirtieth day after this appeal was filed. This court has held, however, that 28 U.S.C. § 1826(b) "does not apply when ... the recalcitrant witness is at liberty pending appeal." *In re Grand Jury Proceedings,* 946 F.2d 746, 749 n. 3. Because the appellant has been at liberty during the pendency of this appeal, 28 U.S.C. § 1826(b) does not apply.

fact that the documents exist, that they were in the possession of the witness, and that they were the documents subject to the subpoena. *Id.* Where these communicative acts of production have "testimonial" value and incriminate the witness, the Fifth Amendment privilege may be invoked. *Doe,* 465 U.S. at 617, 104 S.Ct. at 1244 (holding that Fifth Amendment protects a sole proprietor from producing business records when the act of production itself constituted testimonial incrimination); *Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581 (suggesting that where an act of production is testimonial the Fifth Amendment is applicable, but holding that the act of production was not privileged because the existence of the documents in that case was "a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers").

Although the Fifth Amendment protects individuals from compelled, incriminating testimony, it does not do the same for corporations; an agent of a "collective entity" may not refuse to produce documents even when those documents will incriminate that entity. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (corporation has no Fifth Amendment privilege); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (labor union unprotected by Fifth Amendment). Moreover, an agent of a corporation may not refuse to turn over corporate records even when the content of those records may incriminate the subpoenaed agent herself. *United States v. White,* 322 U.S. at 697, 64 S.Ct. at 1250 (custodian must produce labor union's documents where

contents incriminate custodian); *Wilson v. United States,* 221 U.S. 361, 384, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911) (custodian must produce corporate documents even where contents are self-incriminating). Denying agents immunity is justified by the fact that an agent is not compelled to prepare the documents over which she had temporary control, nor is there a necessary relation between the person producing the documents and the documents themselves. *See Braswell v. United States,* 487 U.S. 99, 123, 108 S.Ct. 2284, 2298, 101 L.Ed.2d 98 (1988) (Kennedy, J., dissenting). Although it has long been clear that a custodian of corporate records may not claim a Fifth Amendment privilege to avoid producing documents even though the *contents* of the documents would incriminate her, it was unclear until recently whether that privilege applied when the *act of production* itself constituted self-incriminating testimony.

In *Braswell v. United States,* the Supreme Court answered this question, holding that a custodian of corporate records must comply with a subpoena ordering the production of those records even when the act of production constitutes testimonial self-incrimination. 487 U.S. at 121, 108 S.Ct. at 2296. The Court held that the "collective entity" doctrine prohibited the agent's reliance on the Fifth Amendment when called upon to produce documents belonging to the principal.

In reaching this conclusion, the Court relied on the "agency rationale undergirding the collective entity decisions." *Braswell* at 109, 108 S.Ct. at 2291. The Court stated that a custodian of records acts in a representative capacity and not a personal

capacity. *Id.* As an agent of the corporation, the custodian is bound by the same obligation to produce records that belongs to the corporation itself. *Id.* "[T]he custodian's act of production is not deemed a personal act, but rather an act of the corporation," irrespective of whether the agent's act is testimonial and incriminating. *Id.*

The *Braswell* Court distinguished *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), which reversed a contempt citation that was issued to the secretary-treasurer of a union who refused to answer questions pertaining to the whereabouts of union records. In *Curcio,* the Court rejected the government's argument "that the representative duty which required the production of union records in the White case requires the giving of oral testimony by the custodian...." *Id.* at 122, 77 S.Ct. at 1149. The Court explained that

> forcing the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind. He might be compelled to convict himself out of his own mouth. That is contrary to the spirit and letter of the Fifth Amendment.

*Id.* at 126-28, 77 S.Ct. at 1151-52. The difference between *Curcio* and *Braswell,* according to the Court, is that "with respect to a custodian of a collective entity's records, the line drawn was between oral testimony and other forms of incrimination."[2] *Braswell,* 487 U.S. at 113, 108 S.Ct. at 2293.

In drawing a line between acts of production and oral

---

[2]Only "incriminating" oral testimony is protected. In *Curcio,* the Court stated that a witness could be compelled to identify documents that had already been produced because in such a case "[t]he custodian is subject to little, if any, further danger of incrimination." 354 U.S. at 125, 77 S.Ct. at 1150.

testimony, the Court appears to have relied on one fact that distinguishes these two types of testimony: the corporation owns the documents. In contrast, to the extent that one's thoughts and statements can be said to "belong" to anyone, they belong to the witness herself. A custodian has no personal right to retain corporate books. Because the documents belong to the corporation, the state may exercise its right to review the records. *Wilson,* 221 U.S. at 384, 31 S.Ct. at 546 (The State's "visitorial power which exists with respect to the corporation of necessity reaches the corporate books, without regard to the conduct of the custodian.") (quoted in *Braswell,* 487 U.S. at 106, 108 S.Ct. at 2289). For Fifth Amendment analysis, oral statements are different. The government has no right to compel a person to speak the contents of her mind when doing so would incriminate that person; to do so would be "contrary to the spirit and letter of the Fifth Amendment." *Curcio,* 354 U.S. at 126-28, 77 S.Ct. at 1151-52.

Appellant in this case is not refusing to produce corporate documents; she claims not to possess them. As in *Curcio,* she is refusing to provide oral testimony regarding the location of the documents. *Curcio* appears, therefore, to be on all fours with this case. Nevertheless, the government argues, and the district court held, that *Curcio* does not apply.

The district court distinguished *Curcio* on the ground that the witness in that case was called before the grand jury pursuant to a *personal* subpoena and not in his capacity as the records custodian, noting that the Court made clear that "[t]his conviction

related solely to petitioner's failure to answer questions asked pursuant to the personal subpoena *ad testificandum*." *Curcio,* 354 U.S. at 121, 77 S.Ct. at 1148. The reason for this language, however, was not to limit the analysis only to personal subpoenas, but merely to indicate that the Court was not addressing Curcio's obligation "to *produce* the books and records demanded in the subpoena *duces tecum*." *Id.* (first emphasis added).

Had the Court intended to rely on the distinction between types of subpoenas, it would have been unnecessary to analyze Curcio's rights under the Fifth Amendment; rather, the Court could simply have held that the Fifth Amendment bars the production of testimonial evidence under a personal subpoena. Furthermore, were *Curcio* limited to personal subpoenas, the Court would not have found it necessary to consider that case in *Braswell,* where the witness was served in his capacity as president of a corporation and the subpoena did not require his testimony. 487 U.S. at 101, 108 S.Ct. at 2286. We see no basis, therefore, for distinguishing *Curcio* on the ground that *Curcio* involved a personal subpoena.

The line drawn between the act of production and oral testimony may be a purely formal one, but it is the line that the Supreme Court has drawn. The refusal to provide testimony pertaining to the location of documents not in appellant's possession falls squarely on the side of the line that the Supreme Court has held is subject to Fifth Amendment protection. Absent an adequate grant of immunity, the appellant may not be compelled to testify as to the location of documents not in her possession when

that testimony would be self-incriminating.[3]

---

[3]The instant case is distinguishable from *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), in which the Court held that where a claim of lack of possession is raised for the first time at a contempt hearing for failure to produce documents, the witness has the burden of proving a present inability to comply, even where this requires providing oral testimony. *Id.* at 759, 103 S.Ct. at 1554. In that case, after Rylander refused to comply with an IRS summons, the district court issued an order to show cause why the order should not be enforced. *Id.* at 754, 103 S.Ct. at 1551. Rylander failed to file a responsive pleading, did not appear for the show cause hearing, and did no more than send an unsworn letter to the court stating that he was not the president of the corporation and that he did not possess the records. *Id.* The court found that he possessed the documents and ordered the summons enforced. *Id.* at 761 n. 3, 103 S.Ct. at 1554 n. 3. Rylander did not seek reconsideration, neither did he appeal. *Id.* at 754, 103 S.Ct. at 1551.

> Having never raised a claim of inability to comply with the summons (and the court having found to the contrary), the only issue before the court at the contempt hearing was whether Rylander had the *present* ability to comply with the order—he was not permitted to raise his original inability to comply with the original summons. *Id.* at 757, 103 S.Ct. at 1552 ("[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed....") (quoting *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948)). At the contempt hearing, where there was a presumption of continued possession of the documents, Rylander had the burden of demonstrating his present inability to comply. *Id.* The *Rylander* Court held, therefore, that in defending a contempt charge where the defendant had not previously challenged his inability to comply with a summons to produce documents (and where the court had already found that the defendant had possessed the documents), a defendant may raise only the defense of a present inability to comply. The Court further held that in making such a defense, the burden of proving that inability is on the defendant, even if doing so requires testimony that may be self-incriminating. The Court did not address the question of whether a defendant could be forced to provide self-incriminating oral testimony in a subpoena enforcement proceeding or in support of a motion to quash a subpoena. *See* White Collar Crime: Survey of Law—1983 Update, 21 Am.Crim.L.Rev. 179, 181-82 (1983) ("*Rylander* leaves open the question of whether resort to the privilege against self-incrimination in a subpoena enforcement proceeding will shift the burden of proving availability to the government."). As our opinion makes clear, a defendant

III.

The government next argues that by stating to the grand jury that she did not possess the records, the witness has waived her Fifth Amendment privilege. *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). We disagree. Because a custodian of corporate records is required to produce corporate documents sought pursuant to a subpoena, her statement at an enforcement hearing that she is not in possession of those documents does not constitute a waiver of her Fifth Amendment rights.

The case before us is distinguishable from *United States v. Hankins,* 565 F.2d 1344 (5th Cir.), *clarified,* 581 F.2d 431 (5th Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979), where the Former Fifth Circuit refused to permit a defendant at a contempt hearing to invoke his Fifth Amendment right not to testify about the present location of documents that he had been previously ordered to produce.[4]

Hankins had refused to turn over partnership records to the IRS on the ground that the records themselves would incriminate him. 565 F.2d at 1348. The district court properly rejected this claim and ordered the records produced. *Id.* at 1351. When all the documents were not produced, upon petition by the government, the

---

may not be forced to testify under these circumstances. Inability to comply, however, may possibly be provable by means other than defendant's own testimony.

[4]Decisions of the Fifth Circuit decided prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit under *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981).

court issued an order to show cause why Hankins should not be held in contempt. *Id.* Because Hankins failed to produce evidence that he could not comply with the enforcement order, he was held in contempt.

On appeal, "Hankins argue[d] that the District Court erred in holding him in contempt because he had informed the Court *at the enforcement hearing* ... that he did not have all the records summoned by the government." *Id.* (emphasis added). The Fifth Circuit found this contention "totally devoid of merit. No evidence on inability to produce was presented by Hankins during the enforcement hearing in response to the government's evidence that the books and records were in his hands." *Id.* In fact, the district court explicitly had found that Hankins had "acknowledged to the Court that he had in his possession, in whatever capacity, the summoned records." *Id.* at 1351 n. 3.

In a clarifying opinion, the Fifth Circuit explained that it would not permit Hankins to relitigate the district court's earlier finding that he had possessed the records at the time the court ordered the summons enforced. 581 F.2d at 437 n. 8. (citing *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948)). Had Hankins "appeared before the Internal Revenue Agent as ordered by the District Court and testified under oath" that he did not possess all the documents, the burden would not have shifted to Hankins to prove that he never had the documents. 565 F.2d at 1352 (distinguishing *United States v. Silvio,* 333 F.Supp. 264 (W.D.Mo.1971)). The issue before the court at the contempt hearing was only Hankins's present inability to comply.

In a subsequent habeas proceeding, *Hankins v. Civiletti,* 614 F.2d 953 (5th Cir.1980), Hankins submitted affidavits attesting to his inability to comply with the summons when initially served and at any time thereafter. *Id.* at 954. The district judge rejected this proffer as insufficient to purge Hankins of his contempt or to comply with earlier mandates of the court. *Id.* Hankins then took the stand and testified that he had complied to the best of his ability. Upon cross-examination, he refused on Fifth Amendment grounds to explain what he knew about the missing papers. On appeal, the court held that Hankins's testimony on direct examination constituted a waiver "of his Fifth Amendment privilege with regard to matters relevant to his direct testimony." *Id.* at 955.

In contrast to the present case, *Hankins* involved an attempt to relitigate an issue during a contempt hearing that was *never* raised at the initial enforcement hearing. Because the defendant failed to raise the claim of inability to produce records at the time the summons was enforced, the burden shifted to the defendant to prove a *present* inability to comply at the time of the contempt hearing, even when doing so would result in self-incrimination. *See United States v. Rylander,* 460 U.S. at 759, 103 S.Ct. at 1554, discussed *infra* at n. 3. Once Hankins testified at the contempt hearing that he was unable presently to comply, however, the government was entitled to cross-examine him. Accordingly, his testimony on direct examination constituted a waiver of his Fifth Amendment privilege with regard to that testimony.

In this case, unlike *Hankins,* appellant raised her claim of

inability to comply at the time of the enforcement proceeding. Had appellant been in possession of the records, she would have been required to turn them over pursuant to the subpoena duces tecum. *See Braswell,* 487 U.S. 99, 108 S.Ct. 2284. Had she remained silent at the enforcement proceeding, the inference would have been that she was refusing to comply with the order to produce corporate records; it would not have been that she was unwilling to state that she did not possess them. This is precisely what happened to Hankins. *See United States v. Meeks,* 642 F.2d 733, 735 (5th Cir. Unit A, April 1981) ("Hankins never made clear that his claim of privilege was directed solely against explaining what role he might have played in the fact that records were no longer available rather than a general claim that the records within themselves might incriminate him."), *vacated,* 461 U.S. 912, 103 S.Ct. 1889, 77 L.Ed.2d 280 (1983).

Thus, for the Court to treat appellant's statement as a waiver would create an intolerable result, placing appellant in the position of remaining silent and being held in contempt for failing to produce the records that she did not have, or saying that she did not have the records and then being ordered to testify. In other words, the appellant would have had to chose between testifying and being held in contempt. Her Fifth Amendment right would have slipped between the cracks. We hold, therefore, that appellant did not waive her rights under the Fifth Amendment.

The government also relies on *Rogers* to argue that any statement appellant might have made concerning possession of the records would not be self-incriminating. When a witness invokes a

claim of privilege, there must be a "substantial and "real' fear" of self-incrimination. *Marchetti v. United States,* 390 U.S. 39, 52, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968); *United States v. Cuthel,* 903 F.2d 1381, 1384 (11th Cir.1990) ("A witness may properly invoke the privilege when he "reasonably apprehends a risk of self-incrimination....' ") (quoting *In re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir.1980)). In *Rogers,* the witness refused to testify out of a desire to protect the person who possessed the records. 340 U.S. at 368, 71 S.Ct. at 439. After considering what information the testimony would reveal about the witness, the Court determined that on the facts of that case it would not have been incriminating. *Id.* Whether testimony is self-incriminating is, however, a factual question. *Doe* at 614, 104 S.Ct. at 1243. Thus, we leave to the district court the question of whether testimony by the appellant as to who possessed the records sought by the subpoena would constitute incriminating evidence.

## IV.

The district court's order of contempt is REVERSED. This case is REMANDED to the district court for a determination of whether appellant has demonstrated a substantial risk of self-incrimination.