**UNITED STATES of America and Philip J. Kennedy, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Leslie R. BARTH; Leslie R. Barth Associates, P.C. a/k/a Barth & Richheimer, P.C.; Leslie R. Barth Organization, Inc.; Southeastern Realty Associates, Inc.; North American Investment Resources, Inc.; and Bismark Realty Consultants, Inc., Respondents.**

Civ. No. H 82–1138.

United States District Court,
D. Connecticut.

April 18, 1984.

On Respondent's Motion for Stay
May 2, 1984.

Donna L. Fatsi, Asst. U.S. Atty., Hart-
ford Conn., Seth G. Heald, Charles H.
Fash, Tax Div., Dept. of Justice, Wash-
ington, D.C., for petitioners.

Joseph Hurwitz, Sorokin & Sorokin, P.C.,
Hartford, Conn., Sheldon Elsen, Lisa Fein-

er, and Erik Eriksson, Jr., Orans, Elsen & Lupert, New York City, for respondents.

## RULING ON PETITIONERS' APPLICATION FOR AN ORDER OF CONTEMPT AND TO ENFORCE ORDER OF COURT AND ORDER

JOSÉ A. CABRANES, District Judge.

On September 2, 1983, in its continuing effort to enforce compliance with five Internal Revenue Service summonses which had issued in the course of an investigation of the tax liabilities of Leslie R. Barth ("Barth"), the Government submitted to the court a proposed order which included three pages of findings of fact and sought to hold Barth and all of the above-named respondent corporations in contempt of court.

At a hearing held December 12, 1983, after oral argument on the Government's application for an order, the court entered an oral ruling in substantial, although not complete, conformity with the order proposed by the Government on September 2, 1983. *See* Certified Official Transcript of Hearing of December 12, 1983 (filed Dec. 19, 1983) ("T. 12/12/83") at 41, 42, 52–55.

Wishing to consider further the legal questions presented and to review the full record of this action, on December 19, 1983 the court issued an order which vacated the order delivered orally at the hearing of December 12, 1983 and stated that, after further consideration, the court would issue a written ruling.

First, with respect to Barth, the Government's application presents the question whether, in a failure-to-file investigation, a custodian of corporate documents may shelter his failure to produce federal and state corporate income tax returns which are the subject of a lawfully-issued Internal Revenue Service summons by claiming his personal privilege against compelled self-incrimination under the Fifth Amendment. The court concludes that he may not, for reasons which are set forth below. Therefore, Barth shall produce the federal and state corporate tax returns specified in the summonses or testify under oath before this court that he did not possess them on the date of the summons or at any time thereafter, at a hearing to be held on Monday, May 7, 1984, at 10:00 a.m.

Secondly, with respect to respondent corporations, the Government's application presents the question whether, when an Internal Revenue Service summons issues against a corporation, the corporation is obligated to appoint an agent who can testify on behalf of the corporation, without fear of self-incrimination. The court concludes that a corporation does have such an obligation. Accordingly, respondent corporations shall appoint such an agent or agents, who, having made such investigation as may be necessary, shall appear to testify before the investigating agents at the United States Courthouse, 450 Main Street, Hartford, Connecticut, on Monday, May 7, 1984, at 11:00 a.m., in order to furnish such information as is available to the corporations pursuant to the summonses.

### A. BARTH

■ The Government contends that under the doctrine of *United States v. O'Henry's Film Works*, 598 F.2d 313 (2d Cir. 1979), Barth must either produce the federal and state income tax returns which are called for by the summonses or give sworn testimony that he did not possess them on the date of the summons or at any time thereafter. *See* Petitioners' Memorandum of Law Submitted with Proposed Order ("Plaintiffs' Memorandum"), attached to Letter from D. Patrick Mullarkey to the undersigned, dated Sept. 2, 1983, at 5.

Barth responds, in essence, that since this is a failure-to-file investigation, an admission that he did not possess copies of the income tax returns would be "so directly self-incriminating" as to violate his Fifth Amendment rights. T. 12/12/83 at 14–15. Barth's argument appears to be that to require, in lieu of production, sworn testimony that he did not possess the corporate income tax returns, would, because of the

nature of the investigation, directly inculpate him:

> MR. ELSEN: * * * Now, of course, they're asking for a file copy of the return and not asking for proof that they filed—you know, a letter of transmittal to the IRS. But I would submit that the difference is so narrow there that it's of no practical consequence. Because a case can be made by the Government simply putting into evidence their records showing no return in question, plus an admission by this individual as an officer of this corporation that he has no file copy.

T. 12/12/83 at 15.

Respondents' counsel seeks to distinguish the facts of the instant case from those of *O'Henry's Film Works*, in which the corporate president refused to produce the cash register tapes and cash register reconciliation statements, as follows:

> MR. ELSEN: [I]f you produced the cash record of a corporation in response to a summons and you say you have produced all of these records, that in itself does not make you liable for a crime. The IRS might be able to use this to investigate the corporation and the like, but it doesn't deal with the matter which is uniquely personal, which is the individual's own personal responsibility.
>
> And when you go to the president of a corporation and you say—I mean suppose they had gone to him and said, "Look, did you personally make sure that this corporation filed a tax return and did you file it," and if he says no, that's a case, that's the end of it.

T. 12/12/83 at 15–16.

As respondents' counsel himself conceded, "this is a very metaphysical kind of argument in many ways." T. 12/12/83 at 13. It is also singularly unpersuasive. Although the fact of Barth's non-possession of the corporate tax returns might arguably have some testimonial value, it would clearly not be as inculpatory as counsel suggests, for it is hardly equivalent to an admission that no tax returns were filed

because none exist. Respondents' counsel suggests that the proposition "no returns were filed because none exist" is the only inference possible from the proposition that Barth did not possess the tax returns on the date of the summons or thereafter. That suggestion is clearly wrong.

Barth also contends that to testify under oath to his non-possession of the corporate tax returns would be as inculpatory to him as similar testimony would have been for the defendant in *United States v. Karp*, 484 F.Supp. 157 (S.D.N.Y.1980). Whether *Karp* is good law is subject to doubt. In any event, as Judge Knapp stated in *Karp*, in refusing to order a sole proprietor to produce all documents in his possession prepared by others and relating to the operation of his business,

> *[a]ssuming (as we actually believe to be the case) that the documents do not exist*, the only way the defendant could avoid the risk of being jailed for contempt would be to assert their *nonexistence*, which is precisely the fact that the Government wishes to establish at trial .... Defendant Karp ... would be faced with the option of incriminating himself through his testimony of non-possession or being held in criminal contempt. It is a purpose of the Fifth Amendment to avoid this dilemma.

484 F.Supp. at 159 (emphasis supplied). Quite apart from the difference between "nonexistence" and "non-possession," which Judge Knapp did not address in *Karp*, that case involved documents of a sole proprietorship, rather than a legal entity with an existence separate and distinct from the agent required to produce its records. It is thus readily distinguishable on its facts from the instant case.

■ It is well established that an individual cannot rely on a personal privilege against self-incrimination to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if those records might incriminate him personally. *Wilson v. United States*, 221 U.S. 361, 377, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911) (corporation);

*Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913) (dissolved corporation); *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913) (dissolved corporation); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (unincorporated labor union); *United States v. Fleischman,* 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950) ("an association ... under investigation" by Congressional committee); *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) (political party in municipality); *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957) (local labor union); *McPhaul v. United States,* 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960) (political organization); *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (dissolved law partnership); *United States v. Shlom,* 420 F.2d 263 (2d Cir.1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970) (corporation owned by single shareholder); *United States v. Richardson,* 469 F.2d 349 (10th Cir.1972) (Subchapter S corporation).

As the Supreme Court stated in *Bellis,* [i]n view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege and largely frustrate legitimate government regulation of such organization.

417 U.S. at 90, 94 S.Ct. at 2184.

■ Barth's obligations fall squarely within the doctrine of *United States v. O'Henry's Film Works, Inc., supra,* which follows the generally accepted principle that a corporate agent has a duty to produce the organization's records even where the records might incriminate the corpora-

tion or the agent, if a valid summons or subpoena for those records has issued. 598 F.2d at 316. In *O'Henry's Film Works,* our Court of Appeals held that

the duty of the putative custodian of an organization's records extends beyond mere production or nonproduction: when the agent fails to produce documents that are the subject of a valid summons or subpoena, if called before a court he must give sworn testimony that he does not possess them. The agent's statement that he does not possess the records at issue is merely part of his duty to comply with a lawful demand for them.

*Id.* at 318. The agent's testimony in this regard is unprivileged, and to testify to non-possession does not waive the agent's personal privilege in regard to other questions about the records. *Id. See also Securities Investor Protection Corporation v. Executive Securities Corporation,* 433 F.Supp. 470, 474 (S.D.N.Y.1977) (custodian of corporate records may not claim personal Fifth Amendment privilege for failing to produce subpoenaed corporate records, but "must state ... under penalty of perjury, either that he does not have possession of the subpoenaed records and is not the custodian of such records or that he has another valid excuse for failing to produce them").

■ Accordingly, Barth shall either produce the summoned corporate tax returns or testify under oath before this court that he did not possess them on the date of the summons, or at any time thereafter,[1] at a hearing to be held on Monday, May 7, 1984, at 10:00 a.m.

## B. THE CORPORATIONS

The Government has pressed its application to have respondent corporations held in contempt for their failure to comply with the summonses by testifying through an

---

1. An IRS summons imposes a duty to retain possession of summoned documents; thus, an individual may not defeat a summons by relinquishing possession of summoned documents. *United States v. Asay,* 614 F.2d 655 (9th Cir.

1980). Accordingly, testimony regarding non-possession since the date of the summons is logically implied by the decision in *O'Henry's Film Works.*

agent about the records specified in the summonses. T. 12/12/83 at 7, 18. Respondent corporations answer that as a matter of law, they cannot be held in civil contempt for failing to testify. They assert, first, that they have not been ordered to testify through an agent; and second, that even if they had been so ordered, it is impossible for them to comply since all persons with knowledge of the corporate records will claim their personal privilege against self-incrimination, and respondent corporations are powerless to coerce putative corporate agents to waive their personal constitutional privileges in order to testify. *See* Respondents' Supplemental Memorandum of Law in Opposition to Government's Proposed Order (filed Dec. 12, 1983), 1–3, 6–7.

After a thorough review of the record, the court concludes that respondents' first contention is correct, although the second is subject to doubt. At the hearing of November 22, 1982, the court granted the Government's Petition to Enforce Five Internal Revenue Service Summonses to the extent indicated on the record of the hearing. *See* Endorsement Order on Government's Petition to Enforce Five Internal Revenue Service Summonses (entered Nov. 23, 1982). Specifically, the court ordered respondents to provide the Government with a list of persons who could testify as agents of the corporations:

> THE COURT: Why don't we short-circuit this, Mr. Elsen. Why don't you provide a list to the Government of all persons who might conceivably be able to speak to these matters. Obviously, in doing so you can take some days and give notice to the persons whose names you are going to give to the Government so that they are aware that their names are being given to them. And that will give them an opportunity to take whatever action they deem appropriate even in this very early stage of the matter.
>
> MR. ELSEN: All right. We will do that.
>
> THE COURT: Then Mr. Toscher will do what, Mr. Toscher?

> MR. TOSCHER: Well, if they provide myself or the Special Agent with the list of any of the individuals who will appear on behalf of the corporations, that person should appear in response to the summons, I'm sure a time could be worked out. Counsel have been working together, there's been no problem there.
>
> THE COURT: And I assume that that will happen, that you will be able to do that informally and that we will have no need to come back here to deal with the matter.
>
> MR. ELSEN: I would hope so, because Mr. Toscher comes from Washington, and we come from New York.

Certified Official Transcript of Hearing of November 22, 1982 (filed Jan. 5, 1983) ("T. 11/22/82") at 8–9, 17, 19, 27. While it was the court's understanding, and apparently that of counsel for the Government, that one or another of the persons designated would appear to testify for the corporations, it is nonetheless true that respondents, having supplied the Government with a list of persons who "might conceivably be able to speak to these matters," complied with the letter, if not the spirit, of the court's order of November 22, 1982. Accordingly, it is arguable that they cannot now be held in contempt of court.

The Government, relying on the decision of the Supreme Court in *United States v. Kordel,* 397 U.S. 1, 8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970), argues that respondent corporations are obliged to designate an agent to testify on behalf of the corporations without claiming his personal privilege against self-incrimination, since to permit all possible agents to invoke the privilege would be, in effect, to permit the corporation to take advantage of a privilege to which it is not entitled. *See also United States v. Springfield Rare Coin Galleries, Inc.,* No. 82–3362 (C.D.Ill. July 7, 1983) (order). In *Kordel,* which involved a corporation's duty to respond to interrogatories, the Court stated,

> [t]o be sure, service of the interrogatories obliged the corporation "to appoint

an agent, who could, without fear of self-incrimination, furnish such requested information as was available to the corporation." The corporation could not satisfy its obligation under Rule 33 simply by pointing to an agent about to invoke his constitutional privilege. "It would indeed be incongruous to permit a corporation to select an individual to verify the corporation's answers, who because *he* fears self-incrimination may thus secure for the corporation the benefits of a privilege it does not have." Such a result would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents.

397 U.S. at 8, 90 S.Ct. at 767 (footnotes omitted), *quoting United States v. 3963 Bottles ... of "Enerjol Double Strength,"* 265 F.2d 332, 336 (7th Cir.), *cert. denied,* 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959).

■ Since corporations can only act through agents, it follows that when a summons or subpoena is lawfully issued against a corporation, the corporation must respond to that summons or subpoena through an agent. Although respondents have attempted to show that various persons with knowledge of the corporate records would invoke their constitutional privilege against self-incrimination, *see, e.g.,* Affidavit of Peter L. Zimroth (filed Sept. 16, 1983), nothing in this record suggests, much less demonstrates, that respondent corporations cannot appoint an agent who, after making appropriate inquiry to apprise himself of the facts, will testify without invoking his privilege against self-incrimination in order to fur-

nish to the investigating agents the information available to the corporations.

Respondents rely on *United States v. Hankins,* 565 F.2d 1344, 1350 (5th Cir. 1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979), for the proposition that if the Internal Revenue Service wishes to obtain testimony from individuals other than Barth, who might have knowledge of the corporate records, "it should use its own resources to subpoena any person likely to have the requisite information."

■ It is clearly the corporations' responsibility, however, to testify in response to the summonses through one agent or another. The court has been shown no reason why the corporations should not designate an agent to testify before the Internal Revenue Service agents in the same way they would be obliged to testify if named in a subpoena *ad testificandum* under Rule 30(b)(6), Fed.R.Civ.P.[2] *See* 8 C. Wright and A. Miller, *Federal Practice and Procedure,* §§ 2103, 2110 (1970). Contrary to the decision in *Hankins* (which does not bind this court),[3] to require the Government to subpoena all possible putative corporate agents personally despite the fact that summonses had lawfully issued against the corporations would be an egregious misallocation of burdens. It would also gravely impede legitimate government regulation of corporate enterprises by allowing corporations effectively to avoid testifying in response to summonses and subpoenas.

Accordingly, lest there be any further doubt about respondent corporations' obli-

---

**2.** Rule 30(b)(6), Fed.R.Civ.P. provides, in pertinent part,

[a] party may in his notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testi-

fy. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the corporation.

**3.** *See, e.g., Securities and Exchange Commission v. Shapiro,* 494 F.2d 1301, 1306 n. 2 (2d Cir. 1974) (Hays, J.) ("[A]ssuming that these cases [from other circuits] still represent good law, they do not bind this court."). In this instance, the court cannot assume that *Hankins* "represent[s] good law."

gations, the five summonses shall be enforced against respondent corporations as follows: respondent corporations shall designate, and if necessary, shall appoint, an agent or agents who shall, having made such inquiry as is necessary in the circumstances, appear in person on Monday, May 7, 1984, at 11:00 a.m., before the Internal Revenue Service agents at the United States Courthouse, 450 Main Street, Hartford, Connecticut, to testify for the corporations in response to the summonses, without invoking their personal privileges against self-incrimination, and shall furnish such information as is available to the corporations.

For the time being, therefore, the Government's application for an order holding respondents in contempt is denied. However, the Clerk shall set down on the calendar a hearing for Tuesday, May 8, 1984 at 10:00 a.m. If any of the respondents have not complied with their legal obligations as specified and ordered herein, this court will not hesitate to enter findings of contempt and impose appropriate sanctions upon a renewed application by the Government at that time.

Leslie R. Barth shall be present in person at the hearings scheduled for May 7 and May 8, 1984.

It is so ordered.

## RULING ON RESPONDENTS' MOTION FOR STAY

On April 18, 1984, this court entered an order enforcing five Internal Revenue Service summonses, which requires that

... Barth shall either produce the summoned corporate tax returns or testify

under oath before this court that he did not possess them on the date of the summons, or at any time thereafter, at a hearing to be held on Monday, May 7, 1984 at 10:00 a.m.

\* \* \*

... [R]espondent corporations shall designate, and if necessary, shall appoint an agent or agents who shall, having made such inquiry as is necessary in the circumstances, appear in person on Monday, May 7, 1984, at 11:00 a.m., before the Internal Revenue Service agents at the United States Courthouse, 450 Main Street, Hartford, Connecticut, to testify for the corporations in response to the summonses, without invoking their personal privilege against self-incrimination and shall furnish such material as is available to the corporations.

On April 24, 1984, respondents moved this court to stay its order pending appeal of the order to the Court of Appeals, and filed a Memorandum in Support of Respondents' Motion for a Stay of an Order Enforcing Five Internal Revenue Service Summonses ("Respondents' Memorandum"). On April 30, 1984, the Government filed a memorandum indicating that it incorporated by reference its Memorandum in Opposition to Respondents' Motion for a Stay Pending Appeal, which had been filed December 19, 1983.[1]

Our Court of Appeals has stated that [a] stay pending an appeal from the denial of a motion to vacate or modify a summons under Section 7602(2) [now 7602(a)(2)] should not be granted as a matter of course, but only when there is a substantial possibility of success, and

---

1. On December 12, 1983, this court entered an order in substantial conformity with the order applied for by the Government, holding respondents in contempt of court, which it vacated *sua sponte* on December 19, 1983. *See* Ruling on Petitioners' Application for an Order of Contempt and to Enforce Order of Court and Order (entered April 18, 1984) at 1–2. Before the *vacatur* of the order of December 12, 1983 was

known to the parties, however, respondents moved for a stay pending appeal (filed Dec. 19, 1983), and the Government submitted a Memorandum for the Petitioners in Opposition to Respondents' Motion for a Stay Pending Appeal (filed Dec. 19, 1983). It is the memorandum filed on December 19, 1983 that the Government incorporates and asks the court to consider now.

then on terms designed to expedite the appeal and, if necessary and appropriate, to protect against the running of any applicable statute of limitations. *In re Turner,* 309 F.2d 69, 72 (2d Cir.1962) (Friendly, J.). The factors to be considered in determining whether to grant the application for a stay are: (a) the strength of the applicant's showing that he is likely to succeed on the merits of the appeal; (b) the likelihood that the applicant will suffer irreparable injury unless the stay is granted; (c) a showing that no substantial harm will befall other interested persons if the stay is granted; and (d) a demonstration that a stay of the order will cause no harm to the public interest. *See generally Reserve Mining Company v. United States,* 498 F.2d 1073, 1076–1077 (8th Cir.1974), *application to vacate stay denied,* 418 U.S. 911, 94 S.Ct. 3203, 41 L.Ed.2d 1156 (1974); 419 U.S. 802, 95 S.Ct. 287, 42 L.Ed.2d 33 (1974), *renewed application denied,* 420 U.S. 1000, 95 S.Ct. 1441, 43 L.Ed.2d 758 (1975); *Eastern Air Lines v. Civil Aeronautics Board,* 261 F.2d 830 (2d Cir.1958); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2904 at 316 (1973).

## I. LIKELIHOOD OF SUCCESS ON APPEAL

### A. BARTH

Leslie R. Barth may properly assert his personal privilege against compelled self-incrimination in response to any questions concerning the whereabouts of the tax returns or the reasons for his non-possession of them. *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957). He may not, however, shelter his failure to produce the summoned corporate tax returns by claiming his personal privilege. As the Supreme Court put it in *Curcio,* "[a] custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers." *Id.* at 124, 77 S.Ct. at 1149. The Court of Appeals has stated that "[t]he agent's statement that he did not possess

the records at issue is merely part of his duty to comply with a lawful demand for them." *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313, 318 (2d Cir. 1979).

The fact that this is a failure-to-file investigation does not alter Barth's obligations. As this court made clear in its ruling entered April 18, 1984, a statement that Barth did not possess the summoned income tax returns on the date of the summons or at any time thereafter does not logically imply that the summoned tax returns do not exist or were not filed, and is therefore not incriminating. Non-existence of the records is one possible inference from a statement of Barth's non-possession of them. But there are other possible inferences: for example, that they were in someone else's possession, or that they once existed but have been destroyed. Thus, respondents' assertion that sworn testimony to non-possession on the date of the summons or at any time thereafter is tantamount to an admission that no tax returns were filed is simply a *non sequitur.*

Accordingly, in the court's view, the likelihood that respondents will succeed on the merits of their appeal with respect to Barth is slight.

### B. THE CORPORATIONS

Respondents contend first, that it is impossible for them to comply with the court's order, since all persons who might have knowledge of the corporate records which were produced in response to the summonses would assert his or her own personal privilege, if called to testify, and, second, that "respondents have already demonstrated that they cannot designate a current employee to testify without invoking his personal Fifth Amendment privilege."

(i)

In a civil contempt proceeding, a defendant may assert as a defense a present inability to comply with the order in question, *United States v. Rylander,*

460 U.S. 752, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); *Maggio v. Zeitz*, 333 U.S. 56, 75–76, 68 S.Ct. 401, 411–412, 92 L.Ed.476 (1948). However, a showing that all putative corporate agents would decline to testify on grounds of the privilege against compelled self-incrimination does not necessarily constitute a sufficient basis for concluding that it is impossible to comply with the court's order. In the context of small, closely-held corporations, so to conclude would invite conspiracies to conceal; it would, in effect, permit the corporation to assert the personal Fifth Amendment privilege of its individual employees, which it is not entitled to do. In these circumstances, it is appropriate that respondent corporations bear the responsibility for designation of an agent—indeed, hiring someone if necessary, to inquire as to the information available to the corporations—in order to furnish such information as is available to the corporations, regarding the documents which have been produced pursuant to the summons, and those which have been summoned but not produced.

In that connection, the court notes that in response to the court's order to provide the Government with a list "of all persons who might conceivably be able to speak to these matters," *see* Certified Official Transcript of Hearing of November 22, 1982 (filed Jan. 5, 1983) at 8–9, 17, 19, 27, counsel for respondents did not supply a list of persons who may have been able to testify with respect to the summoned corporate tax returns, but only with respect to the records which have been produced by respondents. As is well-known by now in these proceedings, respondents never produced the corporate tax returns of which copies were requested in the summonses.

(ii)

 As to respondents' second contention: even if the court assumes *arguendo* that a showing that all putative corporate agents would invoke their personal Fifth Amendment privileges is sufficient to establish a defense of inability to comply with the court's enforcement order, thereby pre-

cluding a finding of contempt of court, a careful examination of the record reveals that respondents have made no such showing.

In response to the court's order to provide the Government with a list "of all persons who might conceivably be able to speak to these matters," *see* Certified Official Transcript of Hearing of November 22, 1982 (filed Jan. 5, 1983) at 8–9, 17, 19, 27, counsel for respondents provided a list of names to the Government of "persons who may have had custody or some knowledge of the corporate records which have been produced by respondents pursuant to Internal Revenue summonses." The list contained seven names: David Richheimer, George Marvin-Smith, Dana Friedman, Richard Scholnick, Richard Pile-Stropher, Eileen Gravatt, and Betty Carter. *See* Letter from Sheldon H. Elsen to Steven Toscher (sometime counsel for petitioner), dated Dec. 9, 1982, appended as Exhibit 2 to Memorandum of Law of the Petitioners in Support of Their Petition for an Order and Adjudication of Contempt, attached to Petition for Order to Show Cause Why Respondents Should Not be Held in Contempt of Court and to Enforce Order of Court (filed Feb. 24, 1983). On September 16, 1983, Peter L. Zimroth filed an affidavit stating that he represented David Richheimer, George Marvin-Smith, Dana Friedman, Richard Scholnick, Eileen Gravatt and Betty Carter. *See* Affidavit of Peter L. Zimroth (filed Sept. 16, 1983) ¶ 1. No representations have been made on behalf of Richard Pile-Stropher, the seventh person on the list of names supplied to the Government by respondents, either in Mr. Zimroth's affidavit or, to the court's knowledge, anywhere else. *See* Certified Official Transcripts of Hearings of August 29, 1983 and December 12, 1983 (filed Sept. 21, 1983 and Dec. 19, 1983, respectively). Accordingly, a sufficient showing that respondent corporations cannot comply with the court's order enforcing the summonses has not been made. There has been no showing whatever that Richard Pile-Stropher, whom counsel for respondents represented in his letter to be a person who "may have

had custody or some knowledge of the corporate records which have been produced by respondents pursuant to Internal Revenue summonses," if called to testify, would claim his personal privilege against self-incrimination.

For all of the foregoing reasons, the court concludes that it is not likely that respondents will succeed on the merits of their appeal with respect to the corporations.

## II. IRREPARABLE INJURY

■ Respondents argue that Barth is irreparably injured the moment he is compelled to give testimony which is protected by the Fifth Amendment. While that may be true, *see, e.g., Pillsbury Co. v. Conboy,* 459 U.S. 248, 267–268, 103 S.Ct. 608, 620, 74 L.Ed.2d 430 (1983) (Marshall, J., concurring) ("Any interest served by compelling the testimony is insufficient to justify subjecting the witness to the risks that attend the compulsion of incriminating testimony."), the court does not agree that testimony to non-possession of copies of federal and state corporate income tax returns on the date of the summons or at any time thereafter is incriminating with respect to the question whether corporate income tax returns were filed several years before, for the reasons set forth above. Since Barth is not irreparably injured if the testimony which is compelled is not incriminating, and it does not seem to the court that the compelled testimony is incriminating, *see* Ruling on Petitioners' Application for an Order of Contempt and to Enforce Order of Court and Order, *supra*, 591 F.Supp. at 94, it has not been established that irreparable injury will flow from denying a stay of the court's order of April 18, 1984.

## III. NO HARM TO OTHER INTERESTED PARTIES, and

## IV. NO HARM TO THE PUBLIC INTEREST

■ As the Government itself states, the remaining two criteria which the court must consider—lack of harm to other interested parties, and lack of harm to the public interest, are congruent in this case where the United States is a litigant. *See* Government's Memorandum at 4. The harm which the Government asserts would flow from granting a stay of the court's order of April 18, 1984, pending appeal, is delay, which "hampers the progress of the investigation," *id.* at 5, particularly since the statute of limitations continues to run. *Id.* at 7. Since respondents have consented to the tolling of all applicable statutes of limitations pending resolution of an appeal, *see* Respondents' Memorandum at 2, it appears to the court that no harm to other interested parties or to the public interest would accrue from granting a stay.

## CONCLUSION

Respondents have invoked a fundamental and cherished principle of the United States Constitution in seeking to delay still again an investigation pursuant to which an enforcement proceeding has been pending in this court since July, 1982. However, the mere incantation of an important constitutional principle does not mean that the asserted constitutional claims have any colorable merit or otherwise warrant staying a court order to comply with well-established legal obligations. In this case, respondents have not shown that there is a likelihood that they will succeed on the merits of an appeal if a stay were granted, or that they would suffer irreparable injury if a stay were not granted. *See In re Turner, supra*, 309 F.2d at 72.

On balance, respondents have not made a sufficient showing that a stay of this court's enforcement order of April 18, 1984 is warranted. Accordingly, the motion for a stay of the court's order of April 18, 1984 is denied. Respondents are, of course, free to pursue their application for a stay with the United States Court of Appeals for the

Second Circuit, in accordance with Rule 8(a), Fed.R.App.P.

It is so ordered.